**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION**

LACEDRIC REESE,

    Plaintiff,                                    CASE NO.:

-VS-

WELLS FARGO BANK, N.A.,

    Defendant.

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

    COMES NOW Plaintiff, Lacedric Reese, by and through the undersigned counsel, and sues Defendant, WELLS FARGO BANK, N.A., and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq*. ("FCCPA").

**INTRODUCTION**

1.    The TCPA was enacted to prevent companies like Defendant from invading American citizen's privacy and prevent abusive "robo-calls."

2.    "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, -US--, 132 S.Ct., 740, 745, 181, L.Ed. 2d 881 (2012).

3.    "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the

telephone out of the wall.'" 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242, 1256 (11th Cir. 2014).

4. According to the Federal Communications Commission (FCC), "Unwanted calls are far and away the biggest consumer complaint to the FCC with over 200,000 complaints each year – around 60 percent of all the complaints…Some private analyses estimate that U.S. consumers received approximately 2.4 billion robocalls per month in 2016." https://www.fcc.gov/about-fcc/fcc-initiatives/fccs-push-combat-robocalls-spoofing.

## JURISDICTION AND VENUE

5. This is an action for damages exceeding Seventy-Five Thousand Dollars ($75,000.00) exclusive of attorney fees and costs.

6. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

7. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014)

8. The alleged violations described herein occurred in St. Lucie County, Florida. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2) as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

9. Plaintiff is a natural person, and citizen of the State of Florida, residing in the city of Port St. Lucie, St. Lucie County, Florida

10. Plaintiff is a "consumer" as defined in Florida Statute § 559.55(8).

11. Plaintiff is an "alleged debtor."

12. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

13. Defendant is a corporation which was formed in California with its principal place of business located at 420 Montgomery Street, San Francisco, California 94163 and which conducts business in the State of Florida through its registered agent, Corporation Service Company located at 1201 Hays Street, Tallahassee, Florida 32301-2525.

14. The debt that is the subject matter of this Complaint is a "consumer debt" as defined by Florida Statute §559.55(6).

15. Defendant is a "creditor" as defined in Florida Statute §559.55(5).

16. Defendant called Plaintiff on Plaintiff's cellular telephone approximately two hundred (200) times in an attempt to collect a debt.

17. Defendant attempted to collect an alleged debt from Plaintiff by this campaign of telephone calls.

18. Upon information and belief, some or all of the calls the Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that he knew it was an autodialer because of the vast number of calls he received and because he heard a pause when he answered his phone before a voice came on the line.

19. Plaintiff believes the calls were made using equipment which has the capacity to store numbers to be called and to dial such numbers automatically.

20. Plaintiff is the subscriber, regular user and carrier of the cellular telephone number (772) ***-9230, and was the called party and recipient of Defendant's calls.

21. Defendant placed an exorbitant number of automated calls to Plaintiff's cellular telephone (772) ***-9230 in an attempt to collect on a disputed debt.

22. Upon receipt of the calls from Defendant, Plaintiff identified the telephone number on her caller ID as a Wells Fargo, N.A. number: (877) 647-8551. Plaintiff was familiar with this number due to the high number of telephone calls she received from Defendant.

23. On several occasions over the last four (4) years Plaintiff instructed Defendant's agent(s) to stop calling his cellular telephone.

24. On or about August 2018, Plaintiff communicated with Defendant from his aforementioned cellular telephone number and instructed Defendant's agent to cease calling.

25. Each subsequent call Defendant made to Plaintiffs aforementioned cellular telephone number was knowing and willful and done so without the "express consent" of Plaintiff.

26. Again, in or about September 2018, Plaintiff answered another call from Defendant to his aforementioned cellular telephone number. Plaintiff spoke to an agent/representative of Defendant and explained to them that they needed to stop calling and harassing his cellular telephone number.

27. Despite clearly and unequivocally revoking any consent Defendant may have believed they had to call Plaintiff on his cellular telephone, Defendant continued to place automated calls to Plaintiff.

28. Plaintiffs numerous conversations with Defendant agents/representatives over the telephone wherein he demanded a cessation of calls were in vain as Defendant continues to bombard him with automated calls unabated.

29. Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling several times during one day, and on back to back days, which such frequency as can reasonably be expected to harass.

30. On or about November 2018, Defendant's harassment was so overbearing that he changed his cellular telephone number to (470)***-4944.

31. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as it did to Plaintiff's cellular telephone in this case.

32. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice just as it did to Plaintiff's cellular telephone in this case, with no way for the consumer, Plaintiff, or Defendant, to remove the number.

33. Defendant's corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to Defendant they wish for the calls to stop.

34. Defendant has numerous other federal lawsuits pending against it alleging similar violations as stated in this Complaint.

35. Defendant has numerous complaints across the country against it asserting that its automatic telephone dialing system continues to call despite requested to stop.

36. Defendant has had numerous complaints from consumers across the country against it asking to not be called; however, Defendant continues to call the consumers.

37. Defendant's corporate policy provided no means for Plaintiff to have his number removed from Defendant's call list.

38. Defendant has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

39. Not a single call placed by Defendant to Plaintiff were placed for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

40. Defendant willfully and/or knowingly violated the TCPA with respect to Plaintiff.

41. From each and every call placed without consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon his right of seclusion.

42. From each and every call without express consent placed by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of occupation of his cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from Defendant's calls.

43. From each and every call placed without express consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of his time. For calls he answered, the time he spent on the call was unnecessary as he repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

44. Each and every call placed without express consent by Defendant to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also

impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

45. Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cell phone's battery power.

46. Each and every call placed without express consent by Defendant to Plaintiff's cell phone where a voice message was left which occupied space in Plaintiff's phone or network.

47. Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of a trespass to Plaintiff's chattel, namely his cellular phone and his cellular phone services.

48. As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affect in a personal and individualized way by stress, anxiety, nervousness, embarrassment, distress and aggravation.

## COUNT I
### (Violation of the TCPA)

49. Plaintiff fully incorporates and realleges paragraphs 1 through 48 as if fully set forth herein.

50. Defendant willfully violated the TCPA with respect to Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant that he wished for the calls to stop.

51. Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

### COUNT II
### (Violation of the FCCPA)

52. Plaintiff fully incorporates and realleges paragraphs 1 through 48 as if fully set forth herein

53. At all times relevant to this action Defendant is subject to and must abide by the laws of the State of Florida, including Florida Statute § 559.72.

54. Defendant has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of his or her family with such frequency as can reasonably be expected to harass the debtor or his or her family.

55. Defendant has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of his or her family.

56. Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute § 559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so

triable and judgment against Defendant for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

*/s/ John C. Distasio*
John C. Distasio, Esquire
Florida Bar No.: 096328
Morgan & Morgan, Tampa, P.A.
One Tampa City Center
201 North Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile:  (813) 257-0571
Primary Email: JDistasio@ForThePeople.com
Secondary Email: LCrouch@ForThePeople.com
*Attorney for Plaintiff*